UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED ELECTRICAL, RADIO and MACHINE WORKERS of AMERICA, LOCAL 151<br><br>Plaintiff,<br><br>v.<br><br>AETNA BEARING COMPANY<br><br>Defendant. | No. 12 CV 308<br>Judge James B. Zagel |

## MEMORANDUM OPINION AND ORDER

Pursuant to Sections 6 and 9 of the Federal Arbitration Act (9 U.S.C. §§ 6 and 9), Plaintiff United Electrical, Radio and Machine Workers of America, Local 151 ("Union") filed an application to confirm an arbitration award issued in Arlington Heights, Illinois on November 12, 2010 and June 30, 2011 by Arbitrator Barry E. Simon ("Arbitrator") in the matter of the Union and Aetna Bearing Company ("Employer" or "Defendant"), in FMCS No. 10-52474. Before the Court is Plaintiff's Rule 12(c) motion for judgment on the pleadings. For the following reasons, Plaintiff's motion is GRANTED.

I.     BACKGROUND

Defendant is a bearings manufacturer for agricultural, industrial and automotive products. For purposes of this action, Plaintiff represents five Aetna employees—Bob Stasiw, Gunther Lehmann, Greg Gettes, Kenny Piekosz and Roman Karp (collectively, "Grievants")—employed in Defendant's Computer Numerically Controlled ("CNC") Department. Defendant and the Union were parties to a Collective Bargaining Agreement ("CBA") that was in effect from October 1, 2008 through September 30, 2011.

In 2009, Defendant temporarily shut down its production plant on several different occasions due to economic slowdown. The temporary shutdowns lasted from between five to ten business days, and were preceded by notices issued one week in advance to all affected employees. The notices informed employees that the shutdown periods would be unpaid, but that employees with remaining vacation days could use them during the period. The schedule of notices and the corresponding shut down periods relevant to this action is as follows:

1. Notice: April 13, 2009. Shutdown period: April 20-24, 2009.
2. Notice: June 8, 2009. Shutdown period: June 15-19, 2009.
3. Notice: July 28, 2009. Shutdown period: August 4-14, 2009.
4. Notice: August 26, 2009. Shutdown period: August 31-September 4, 2009.
5. Notice: September 29, 2009. Shutdown Period: October 5-16, 2009.

On October 1, 2009, the Union filed an internal grievance action, alleging that the temporary shutdown periods violated a provision of the CBA that guaranteed full employment of CNC staff so long as production levels remained above a certain level.[1] The CBA provision specifically stated that any layoffs made while production levels were above the benchmark level "shall result in the Company paying full wages and full benefits to any CNC affected employee for the balance of the three year period . . . ". The grievance stated the Union sought "all monies from Oct 1, 2008 to Sept 30, 2009 be made whole," in accordance with this provision.

The parties were unable to resolve the grievance on their own because Defendant insisted that the temporary shutdowns did not qualify as "layoffs" under the CBA. Consequently, the Union submitted the grievance to final and binding arbitration pursuant to Article V § 1 of the CBA. The parties jointly chose an arbitrator and the arbitration was held on August 20, 2010. Both Defendant and the Union had an opportunity to present witnesses and other evidence in

---

[1] The parties agree that production never fell below the benchmark production level.

support of their cases. On November 12, 2010, the Arbitrator issued an Opinion and Award sustaining the grievance (based on his finding that the temporary shutdowns constituted layoffs that violated the CBA provision guaranteeing full employment of CNC staff) and ordering the Grievants to be made whole. The Opinion and Award provided as follows:

> The grievance is sustained. The Employer is directed to make the CNC employees whole for wages and benefits lost as a result of the layoffs covered by the five notices encompassed by the grievance. The Arbitrator will retain jurisdiction for sixty days following the date of this Award solely for the purpose of resolving disputes concerning the remedy ordered herein.

(Dkt. Enry 1, Ex. A at 17).

Following the issuance of the Arbitrator's Opinion and Award, new disputes arose between the parties over how to calculate damages in order "to make the CNC employees whole," and which layoff periods were covered by the grievance. Most significantly, Defendant argued that the October 5-16, 2009 layoff period fell outside the scope of the controversy submitted to the Arbitrator, because the grievance sought only "monies from Oct 1, 2008 to Sept 30, 2009 be made whole."

The parties brought these outstanding issues to the Arbitrator's attention and on June 30, 2011, he issued a Supplemental Order. The Supplemental Order clarified the manner in which vacation and overtime payments should be calculated under the "make whole" remedy. It did not, however, provide specific figures to be paid to each grievant. In response to Defendant's argument that the October 5-16 period fell outside the scope of the grievance, the Supplemental Order stated, "Finally, the Employer has attempted to reargue the question of what layoff periods are covered by the Award. That issue was addressed in the Award and need not be further discussed herein."

After the Supplemental Order was issued, the parties continued to fight each other over specific amounts owed and whether the October 5-16 period was covered under the Opinion and Award. On November 15, 2011, counsel for the Union sent Defendant a letter that set forth a schedule of specific damage amounts and vacation hours owed to each of the Grievants. Defendant did not respond to this letter. On January 17, 2012, Plaintiff filed this action. In its Answer to the Complaint, Defendant agreed to use the computations set forth in Plaintiff's November 15, 2011 letter in order to calculate the proper remedy in this case. (Dkt. Entry 13 at 8-9). However, Defendant argues that the figures must be adjusted to deduct damages from the October 5-16 layoff period, which Defendant maintains was outside the scope of the grievance.

Because Defendant has agreed to the calculations laid forth in Defendant's Exhibits C and D (Dkt. Entry 13), the only questions before this Court are 1) whether the Arbitrator intended to include the October 5-16, 2009 layoff that was noticed in on September 29, 2009 in his November 12, 2010 Opinion and Award; and 2) if so, whether he exceeded his authority in doing so. Both of these issues are resolvable based on the pleadings and accompanying exhibits alone. *Northern Indiana Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452 (7th Cir. 1998) (Rule 12(c) permits a judgment based on the pleadings alone, which include the complaint, the answer, and any written instruments attached as exhibits.).

II.     ANALYSIS

A motion for judgment on the pleadings should be granted "only if the moving party clearly establishes that no material issue of fact remains to be resolved and that he or she is entitled to judgment as a matter of law." *Nat'l Fidelity Life Ins. Co. v. Karaganis*, 811 F.2d 357, 358 (7th Cir. 1987). In considering a Rule 12(c) motion, I may "consider only matters presented in the pleadings and must view the facts in the light most favorable to the nonmoving party." *Id*.

4

The burden is on the moving party to "demonstrate that there are no material issues of fact to be resolved." *Northern Indiana Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452 (7th Cir. 1998).

I begin my analysis by emphasizing the limited manner in which federal courts are authorized to review the decisions of duly appointed arbitrators. Under § 9 of the FAA, I "must" confirm an arbitration award "unless" it is vacated, modified, or corrected "as prescribed" in §§ 10 and 11. *Hall Street Associates, LLC v. Mattel, Inc.*, 552 U.S. 576, 582 (2008). Section 10 lists grounds for vacating an award, and § 11 lists grounds for modifying or correcting one. The Supreme Court has characterized §§ 9-11 of the Federal Arbitration Act as "substantiating a national policy favoring arbitration with just the limited [judicial] review needed to maintain arbitration's essential virtue of resolving disputes straightaway." *Id.* at 577.

As to the first question of whether the Arbitrator intended his November 12, 2010 opinion to encompass the October 5-16, 2009 layoff period, I find in favor of the Plaintiff. The Opinion and Award directs that CNC employees be made whole for "wages and benefits lost as a result of the layoffs covered by **the five notices** encompassed by the grievance." Defendant admits in its Response to Plaintiff's Rule 12(c) motion that "there were six shutdowns and corresponding notices in 2009." (Dkt. Entry 18 at 2). Both parties and the Arbitrator agree that the final notice, issued on November 10, 2009, is not covered by the grievance. (Dkt. Enry 1, Ex. A at 12-13). Therefore, under a plain reading of the Arbitrator's award, the "layoffs covered by the five notices encompassed by the grievance" must be the layoff periods that correspond with the first five notices issued.

As to the second question of whether the Arbitrator exceeded his authority by including the October 5-16, 2009 period in the Award, I again find in favor of the Plaintiff and hold that

the Arbitrator did not exceed his authority. The Arbitrator interpreted the "all monies from Oct 1, 2008 to Sept 30, 2009," language of the grievance to mean "all monies from layoffs covered by notices issued from October 1, 2008 to September 30, 2009." This was a reasonable interpretation, considering that the most recent notice at the time of filing had been issued on September 29, 2009, the day prior to the September 30 end date, while the most recent shutdown period had ended on September 4, 2009, almost a full month prior. And although damages for the October 5-16, 2009 shutdown had not technically accrued by September 30, 2009, the notice had been issued and the shutdown was a certainty—the issue was ripe for resolution. Finally, considering that the exact same legal question applied to the October 5-16 shutdowns as all the previous ones, there is no logical reason why Plaintiff would not intend to include the October 5-16 shutdown in its grievance.

Considering that there is no dispute that the CBA empowered the Arbitrator to decide whether the first four temporary shutdowns constituted improper layoffs, it cannot be said that the Arbitrator exceeded his powers (in the 9 U.S.C. § 10(a)(4) sense) in answering the same question with respect to the October 5-16 shutdown period. The question is more properly framed as whether the Arbitrator misread the grievance so as to award upon a matter not submitted to him (9 U.S.C. § 11(b)). But just as courts will not vacate awards on the ground that the arbitrator misread the contract so long as the award is clearly based on the arbitrator's interpretation of the contract language, *see Jasper Cabinet Co. v. United Steelworkers of America et al.*, 77 F.3d 1025, 1028-1029 (7th Cir. 1996) nor should courts find matters to be improperly submitted when an arbitrator's contrary finding is clearly based on his interpretation of the grievance. At the very least, the question of whether a matter has been properly submitted should be afforded the same "any reasonable doubt" presumption in favor of enforcing the award

that is provided in similar contexts. *Polk Bros, Inc. v. Chicago Truck Drivers*, 973 F.2d 593, 597 (7th Cir. 1992). *See also United Steel Workers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 598 (1960) ("A mere ambiguity in the opinion accompanying an award, which permits the inference that the arbitrator may have exceeded his authority, is not a reason for refusing to enforce the award."). Either way, Plaintiff prevails in this case.

III. CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings is GRANTED. The Arbitrator's November 12, 2010 Opinion and Award and June 30, 2011 Supplemental Order are CONFIRMED. Defendant is HEREBY ORDERED to comply with the Award in the following manner:

A. Pay each affected union member the following amounts:

  1. Bob Stasiw: $765.93

  2. Gunther Lehmann: $3,487.75

  3. Gregg Gettes: $3,543.15

  4. Kenny Piekosz: $4,063.15

  5. Roman Karp: $3,085.71

B. Credit each affected union number the following number of vacation hours:

  1. Bob Stasiw: 80 hours

  2. Gunther Lehmann: 80 hours

  3. Greg Gettes: 80 hours

  4. Kenny Piekosz: 80 hours

  5. Roman Karp: 40 hours

ENTER:

James B. Zagel
United States District Judge

DATE: March 1, 2013